UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CERTAIN APPROVAL PROGRAMS, LLC                          CIVIL ACTION

Versus                                                   NO.: 11-3189

BRYAN ELLIS, ET AL.                                      SECTION: "F"

ORDER AND REASONS

Before the Court is the defendants' motion to dismiss for lack of personal jurisdiction.  For the reasons that follow, the motion is GRANTED.

I. Background

This dispute centers on an unsuccessful joint venture to market real estate programs over the internet.

Plaintiff, Certain Approval Programs, LLC, is a Louisiana limited liability company with its principal place of business in Louisiana.  Certain Approval Programs characterizes itself as selling "premium real estate investment consulting products." Primarily, the company provides programming for real estate investors, drawing on the real estate investment experience of the company's officers.  The company markets its services over the internet, and by email, and relies in large part on email lists of active real estate investors to generate business.  In early 2010, Certain Approval Programs purchased a company called EasyHud.com, which owned a real estate consulting website and two email marketing lists, containing approximately 23,000 email

addresses combined.

Defendants Bryan Ellis and his wife Carole Jeanne VanSickle own WebWords, a company which also operates a real estate consulting website called The Bryan Ellis Real Estate Letter. Similarly to Certain Approval Programs, defendants also rely on email lists of real estate investors to generate business. Ellis and Vansickle are residents of the State of Georgia, and WebWords is a Georgia corporation, with its principal place of business in Powder Springs, Georgia. WebWords does not have an address in Louisiana, is not licensed or qualified to do business in Louisiana, has no agent for service of process in Louisiana, and has no bank account or telephone listing in Louisiana. The company also does not employ or pay taxes in Louisiana.

According to the plaintiff, Brian Ellis first reached out to Certain Approval Programs in late 2009 to propose working together. Jack Sternberg, the president of Certain Approval Programs, showed interest in Ellis' offer, and he met with Ellis over dinner in Atlanta, Georgia, to explore generally how the two companies might work together. After an encouraging dinner, Sternberg had breakfast with both Ellis and VanSickle, still in Atlanta, at which further discussions were held.

In February 2010, defendants met with Certain Approval Programs in New Orleans, Louisiana, to further discuss a joint venture. According to defendants, they were in New Orleans

attending a trade show when the meeting occurred. Plaintiff disputes this characterization. According to plaintiff, VanSickle's primary purpose may have been the trade show, but Ellis traveled with her specifically to meet with plaintiff. According to plaintiff, Ellis conveyed more details of the proposed joint venture, and Sternberg had dinner with Ellis and VanSickle that same night, where more particulars of the joint venture were covered. No agreement was concluded in New Orealans, however.

The negotiation of the joint venture proposal continued over Skype, an online chat and video program, with plaintiff in Louisiana, and defendants in Georgia. Under the proposal, the defendants would operate email marketing campaigns from their offices in Georgia using both defendants' own email lists, and email lists provided by Certain Approval Programs. Plaintiff and defendants were to split all profits and expenses of the marketing efforts evenly. Additionally, both plaintiff and defendants would have access to all bank, merchant, email and affiliate marketing accounts used by the joint venture. When the joint venture ended, both the plaintiff and the defendants would be entitled to a full copy of the three email lists (two contributed by the plaintiff and one contributed by the defendants). The parties do not specify whether the terms of the joint venture were reduced to writing, or when such a written

agreement was signed. The parties agreed to the joint venture on approximately March 8, 2010.

After the parties agreed to pursue the joint venture, Certain Approval Programs states that in addition to the two lists containing approximately 23,000 email addresses, plaintiff agreed to provide, and did provide for the benefit of the joint venture, numerous other email lists that collectively contained approximately 140,000 more email addresses.

The parties launched the joint venture in March 2010, and plaintiff asserts that the defendants soon began to mismanage the lists for their own personal benefit, and to the detriment of the joint venture, and Certain Approval Programs. In addition, plaintiff asserts that Ellis made a second trip to New Orleans within thirty to forty-five days after the parties' agreement, related to the joint venture. Plaintiff alleges that the defendants structured their email messages so that only the defendants would be credited with resulting sales, instead of the joint venture as a whole. Additionally, plaintiff asserts that the defendants did not provide Certain Approval Programs with access to affiliate marketing accounts; that as a result plaintiff did not know how much money was being generated by the joint venture; that defendants directed the recipients of their marketing emails to defendants' separate website, by which only defendants generated revenue; that defendants directed all

revenue for the joint venture through their own, separate bank accounts instead of the accounts specifically set up for the joint venture; that Certain Approval Programs could not monitor the accounts and the amounts in them; that the defendants refused to pay Certain Approval Programs fifty percent of all joint venture profits; and that defendants entered into joint ventures with third parties, used the lists obtained from Certain Approval Programs, but failed to give any share of their revenue to the plaintiff.

By July 2010, plaintiff asserts that it had discovered the full extent of defendants' allegedly fraudulent activity, and decided to terminate the joint venture.  Defendants agreed to the termination.

Plaintiff sued defendants in this Court on December 30, 2011, invoking the Court's diversity jurisdiction.  Plaintiff brings claims for misappropriation of trade secrets, breach of fiduciary duties, breach of contract, fraud, conversion, unjust enrichment, and vicarious liability.  The plaintiff asks the Court for damages as well as injunctive relief.

## II. Personal Jurisdiction Standard

When nonresidents like the defendants move to dismiss for lack of personal jurisdiction, the plaintiff seeking to invoke the jurisdiction of this Court bears the burden of establishing it.  See Luv N' Care v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th

Cir. 2006). The plaintiff may meet its burden by presenting a prima facie case for personal jurisdiction where, as here, the Court decides the matter without an evidentiary hearing. Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994). The Court will take all uncontroverted allegations in the complaint as true and resolve any conflicts in the plaintiff's favor. Id. The Court is not restricted to pleadings, but may consider affidavits, interrogatories, depositions, or any other appropriate method of discovery. Id.; see Jobe v. ATR Mktg., Inc., 87 F.3d 751, 752 (5th Cir. 1996).

The Court may exercise personal jurisdiction over a nonresident defendant only if two requirements are satisfied: (1) the forum state's long-arm statute confers personal jurisdiction; and (2) the exercise of jurisdiction does not exceed the boundaries of Due Process. See Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 270 (5th Cir. 2006). Because the limits of Louisiana's long-arm statute are co-extensive with the limits of constitutional due process, the inquiry is simply whether this Court's exercise of jurisdiction over the defendants would offend due process. See LA. REV. STAT. ANN. § 13:3201(B); Luv N' Care, 438 F.3d at 469; see also Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999).

The Due Process Clause limits the Court's power to assert

personal jurisdiction over a nonresident defendant. <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 413-14 (1994). That is, a nonresident defendant must have meaningful minimum "contacts, ties, or relations" with the forum state in order for jurisdiction to be constitutional. <u>See</u> <u>Luv N' Care</u>, 438 F.3d at 469 (citing <u>Int'l Shoe Co. v. Wash.</u>, 326 U.S. 310, 319 (1945)). The minimum contacts analysis asks whether the nonresident defendant purposefully availed himself of the benefits and protections of the forum. <u>Wilson v. Belin</u>, 20 F.3d 644, 647 (5th Cir. 1994).

The minimum contacts test takes two forms, and the constitutional limitations on the exercise of personal jurisdiction differ depending on whether a court seeks to exercise general or specific jurisdiction over the defendant. Specific jurisdiction exists if the plaintiff shows that the defendants have purposely directed their activities toward the forum state and that its cause of action arises out of or results from the defendants' forum-related contacts. <u>Luv N' Care</u>, 438 F.3d at 469 (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474 (1985) and <u>Nuovo Pignone v. STORMAN ASIA M/V</u>, 310 F.3d 374 (5th Cir. 2002)) (internal quotation marks omitted). Once the plaintiff makes this preliminary showing, personal jurisdiction will lie so long as maintaining the suit will not "offend traditional notions of fair play and substantial justice." <u>Id.</u>

General jurisdiction, on the other hand, exists where contacts between the defendant and the forum state have been continuous and systematic to such an extent that the exercise of personal jurisdiction is justified.  Dickson Marine, Inc. v. Panalina, Inc., 179 F.3d 331, 339 (5th Cir. 1999).

### III. Discussion

Defendants argue that they lack the minimum contacts necessary for this Court to exercise personal jurisdiction over them.  On this record, the Court agrees.

Although the defendants raise the issue of general jurisdiction in their motion to dismiss, the plaintiff does not address general jurisdiction in its opposition memorandum.  Accordingly, the parties' dispute relates only to whether this Court can exercise specific personal jurisdiction over the defendants.

Although the plaintiff urges the Court to consider this case as one based largely on claims for fraud and other tortious conduct, that characterization belies the fact that this case is based on a joint venture that the parties entered into for their mutual benefit.  That the plaintiff now accuses the defendants of having cheated it out of email lists in contravention of their agreement does not negate the fact that their relationship was supposed to be one of equals, working together for their common profit.

In a case factually similar to this one, the United States Court of Appeals for the Ninth Circuit stated:

> Although some of [plaintiff's] claims sound in tort, all arise out of [plaintiff's] contractual relationship with the defendants. In such a case, the mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for jurisdiction. Instead, we must look to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine if the defendant's contacts are "substantial" and not merely "random, fortuitous, or attenuated."

Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990).

Applying this framework to the facts of this case, the Court finds that minimum contacts are lacking.

First, there appears to be no clear location where negotiation discussions for setting up the joint venture were held. Although Ellis first reached out to plaintiff in 2009, plaintiff's president, Jack Sternberg, then met with the defendants in Georgia over dinner and breakfast to begin discussions regarding the joint venture. The parties then continued their negotiations when the defendants visited New Orleans in February 2010 for several reasons. The parties then spoke over Skype, and finally concluded their joint venture proposal in March. As the Fifth Circuit observed in Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026, 1029 (5th Cir. 1983), even trips by a company's executives to

affirmatively close a business deal do not always rise to the level of minimum contacts. Id. Here, by contrast, it is clear that the agreement was not finalized in Louisiana, and it is equally clear that Louisiana was only one of a few places in which negotiations took place. And only two visits took place in Louisiana, one of which did not involve only the joint venture.

Second, the terms of the joint venture make it plain that the defendants' work was to take place almost entirely in Georgia. It would be from Georgia that the defendants would conduct their marketing campaigns (using the plaintiff's email lists) for the parties' mutual benefit. If an agreement was ever signed, which the defendants do not clarify, there is no evidence it was signed in Louisiana.

The Court finds the facts of this case are similar to those in Seatrepid Louisiana, LLC v. Richard Phillips Marine, Inc., 2009 WL 1402232 (E.D. La. 2009). There, the court found that it lacked personal jurisdiction over the defendants:

> In the present case, the only contacts RPM had with SeaTrepid in Louisiana were the initial visit to SeaTrepid's display booth at a New Orleans conference and negotiations by telephone and email, all leading up to the formation of the contract which was concluded by email. Any contact with Louisiana by RPM was tantamount to the "mere fortuity" that SeaTrepid is located in the forum, which is not enough to hale RPM into Court. In considering the totality of the facts, focusing on the quality and nature of RPM's contact with Louisiana, the Court finds that RPM did not purposefully avail itself of the

10

>    privilege of conducting activities in the
>    forum such that it invoked the benefits and
>    protections of Louisiana's laws.

<u>Seatrepid Louisiana, LLC</u>, 2009 WL 1402232, at *7.  Similarly in this case, the record does not disclose any intent on the part of the defendants to avail themselves of the forum state.  That the defendants ultimately decided to join with a Louisiana company in their joint venture (even if they later committed alleged misdeeds) does not, in itself, constitute minimum contacts.

   Accordingly, IT IS ORDERED: the defendants' motion to dismiss for lack of personal jurisdiction is GRANTED.

                              New Orleans, Louisiana, May 15, 2012.

                              _____
                                    MARTIN L. C. FELDMAN
                                 UNITED STATES DISTRICT JUDGE